# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS QUIROZ, | CASE NO. 1:06-CV-01426-OWW-DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' |
| v. | MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | PART |
| | (DOC. 26) |
| Defendants. | OBJECTIONS DUE WITHIN **TWENTY-ONE (21) DAYS** |

## Findings And Recommendations

**I.     Background**

Plaintiff Carlos Quiroz ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding against Defendants Mallika Attygalla, Chyi Shen, Shu Pin Wu, Perlita McGuinness, and Derral G. Adams for deliberate indifference to a serious medical need in violation of the Eighth Amendment.  On November 19, 2009, Defendants filed a motion for summary judgment.  (Defs.' Mot. For Summ. J., Doc. 26.) On December 28, 2009, after receiving an extension of time, Plaintiff filed his opposition.  (Pl.'s Opp'n to Defs.' Mot. For Summ. J., Doc. 29.)  On December 29, 2009, Defendants filed their reply.  (Defs.' Reply, Doc. 28.)  The matter is deemed submitted pursuant to Local Rule 230(l).[1]

///

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court's Order filed February 27, 2008.  *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

## II.   **Legal Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.*  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that

2

1  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

2  the nonmoving party, *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

3        In the endeavor to establish the existence of a factual dispute, the opposing party need not

4  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

5  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

6  trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

7  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

8  *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

9  amendments).

10       In resolving the Motion for Summary Judgment, the Court examines the pleadings,

11 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

12 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, *Anderson*, 477

13 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

14 court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United*

15 *States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).  Nevertheless, inferences are not

16 drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from

17 which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-

18 45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

19       Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

20 show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as

21 a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

22 issue for trial.'"  *Matsushita*, 475 U.S. at 586-87 (citations omitted).

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

III.     **Statement of Facts**[2]

A.     **Prior To Incarceration**

Plaintiff was born with congenital[3] glaucoma with secondary bupthalmos (large eye) and megalo cornea (large cornea).  (Defs.' Undisputed Fact ("DUF") 1.)[4]  Plaintiff's vision was poor for many years, eventually requiring a corneal transplant in 1990.  (DUF 2.)  Plaintiff also required a left trabeculectomy in 1988 to control his glaucoma.  (DUF 3.)  A trabeculectomy is a surgical procedure to drain the eye in order to relieve pressure.  (DUF 4.)  Following the procedure, Plaintiff's intraocular pressures were stable (between 6-12 mm).  (DUF 5.)  Plaintiff's glaucoma has been managed on a variety of topical eye medications, including Alphagan, Timoptic, and Xalatan.  (DUF 6.)  Plaintiff attests that he did not discover he had glaucoma until he was 6 years old.  (Pl.'s Decl. Opposing David Kaye ¶ 2)

In 2001, Plaintiff damaged his left corneal transplant in a motorcycle accident.  (DUF 7.)[5]

---

[2]   All facts are considered undisputed, unless otherwise noted.  Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(e), all disputes with the movant's statement of facts must be supported with citation to evidence.  *See* L. R. 260(b) (parties opposing Statement of Undisputed Facts shall deny those that are disputed, "including with each denial a *citation* to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial") (emphasis added). As Plaintiff is a prisoner proceeding pro se, the Court will consider Plaintiff's affidavits in dispute.  However, the Court cannot treat Defendants' facts as denied unless there is some evidence to support such a denial.  The Court considered all of Plaintiff's denials and supporting evidence, even if not specifically mentioned herein.

Defendants submitted declarations in support of their motion which were not attested under penalty of perjury.  On July 19, 2010, the Court granted Defendants leave to submit amended declarations.  Defendants submitted amended declarations on August 2, 2010.  (Doc. 34.)  On July 29, 2010, Plaintiff objected to the Court sua sponte granting Defendants leave to submit amended declarations.  (Doc. 33.)  The Court overrules Plaintiff's objections.  Plaintiff would have received the same opportunity to submit amended declarations if Plaintiff's declarations were similarly deficient.

[3]   Plaintiff contests Defendants' statements that his glaucoma and kidney issues are congenital, because they were found after his birth.  Plaintiff's argument is incorrect.  It is entirely possible that a congenital disease is not discovered until a later date.

[4]   Defendants rely on affidavits from two expert witnesses: medical doctor David B. Kaye, an expert in ophthalmology, and medical doctor J. Bradley Taylor, an expert in urology.  (Defs.' Am. Decls., Ex. 1, David B. Kaye Decl.; Ex. 2, Bradley Taylor Decl.)  Doctor Kaye's declaration is cited for Defendants' Undisputed Facts 1-9, 30-53, 55, 58, and 61-67.  Doctor Taylor's declaration is cited for Defendants' Undisputed Facts 10-13 and 68-81.  Both doctors appear competent to testify as experts, and have submitted curriculum vitae in support.  Fed. R. Evid. 702.  Plaintiff raises no objection to treating doctors Kaye and Taylor as experts in the fields of ophthalmology and urology, respectively.

[5]   Plaintiff contends that the accident was in 1989.  This is undermined by Plaintiff's Exhibit J submitted in support of his opposition.  Exhibit J is a request for inmate appeal reconsideration to Grievance No. SATF-C-05-00436.  The request is dated October 28, 2005.  Plaintiff contends in that letter that he had left cornea replacement

4

1    The degree of eye damaged following motorcycle accident is not clear, but Plaintiff's vision has

2    been in the region of 20/200 in both eyes.  (DUF 8.)  Doctor Kaye attests that Plaintiff was

3    treated by his own ophthalmologist, doctor Stainer, for right iritis (inflammation of the iris) with

4    Prednisdone eye drops for close to a year, with no evidence of secondary glaucoma.  (DUF 9.)

5    Plaintiff attests that he never received Prednisdone from Dr. Stainer for treatment of iritis.  (Pl.'s

6    Decl. Opposing David Kaye ¶ 3.)

7        Plaintiff has a condition known as medullary sponge kidney.  (DUF 10.)  This condition

8    results in multiple calcifications forming primarily in the parenchyma or body of the kidney

9    substance which sometimes work their way into the collection system of the kidney, passing into

10    the ureters and causing pain.  (DUF 11.)  Medullary sponge kidney is a congenital condition.

11    (DUF 12.)  Nothing any medical providers did or did not do resulted in the formation of these

12    calculi.  (DUF 13.)  Plaintiff contends that prevention of future stones is important.  (Pl.'s Opp'n,

13    Ex. E, Urology Letter by Dr. Roger Low, dated April 5, 2006.)

14       **B.**     **Wasco State Prison**

15        Plaintiff was incarcerated at Wasco State Prison from November 14, 2003 to March 10,

16    2004.  (DUF 27.)  Defendant Shen is a medical doctor licensed by the State of California and in

17    good standing with the California Medical Board.  (DUF 18.)  Defendant Shen was employed by

18    the CDCR, and treated Plaintiff's medical issues at Wasco State Prison during the relevant time.

19    (DUF 19.)  Defendant Shen contends that at no time did Defendant Shen prevent Plaintiff from

20    receiving medical treatment for his eye condition or kidney stones.  (DUF 20.)[6]

21        Plaintiff attests that from November 14, 2003 through March 10, 2004[7], Defendant Shen

22

_____

23   surgery in 1990.  He suffered damage to this cornea from a motorcycle accident 11 years later.  Thus, Plaintiff
  concedes that the motorcycle accident occurred in 2001.

24      [6]  Defendants contend that Defendants Shen, Attygalla, Wu, McGuinness, and Adams did not disregard an

25   excessive risk to Plaintiff's health or safety.  (Derral G. Adams Decl. ¶ 7; Mallika Attygalla Decl. ¶ 6; Chyi Shen
  Decl. ¶ 6; Shu-Pin Wu Decl. ¶ 7; Perlita McGuinness Decl. ¶ 8.)  This is a legal conclusion.  Defendants are not

26   competent to testify to legal conclusions as statements of fact.  Fed. R. Civ. P. 56(e).  Accordingly, those portions of
  the affidavits are stricken.  The Court will treat such statements as argument.

27      [7]  Plaintiff lists the dates as "November 14, 2004, through March 10, 2005" which the Court presumes is

28   error, as Plaintiff does not dispute that he was at Wasco State Prison from November 14, 2003 to March 10, 2004,
  and Defendant Shen treated him at the time.

1  delayed in providing Plaintiff with Alphagan and Xalatan, only providing Plaintiff with Timolol.

2  (Pl.'s Decl. In Opp'n of Def. Shen ¶¶ 3-4.)  Plaintiff attests that he received no medical treatment

3  for any of his medical problems.  (Pl.'s Decl. In Opp'n Def. Shen ¶ 6.)  Plaintiff attests that

4  Defendant Shen refused to send him to see a urology specialist. (Pl.'s Decl. In Opp'n of Def.

5  Shen ¶¶ 8-9.)

6          Defendant Shen's medical treatment was appropriate and within the standard of

7  reasonable medical care.  (DUF 58.)  At no time did Defendant Shen refuse Plaintiff medical

8  treatment that Plaintiff needed.  (DUF 59.)  Plaintiff disputes DUFs 58 and 59 as stated above.

9          **C.     Lancaster State Prison**

10         Plaintiff was incarcerated at Lancaster State Prison from March 10, 2004 to May 18,

11  2004.  (DUF 28.)  Defendant Attygalla, is a medical doctor licensed by the State of California

12  and in good standing with the California Medical Board.  (DUF 18.)  Defendant Attygalla was

13  employed by the CDCR, and was Plaintiff's doctor at Lancaster State Prison during the relevant

14  time.  (DUF 19.)  Defendant Attygalla contends that at no time did Defendant Attygalla prevent

15  Plaintiff from receiving medical treatment for his eye condition or kidney stones.  (DUF 20.)

16         Plaintiff attests that Defendant Attygalla was aware that Plaintiff required a combination

17  of Alphagan, Timolol, and Xalatan for his glaucoma, but Defendant Attygalla refused to give

18  Plaintiff Xalatan and Timolol.  (Pl.'s Decl. In Opp. Of Def. Attygalla ¶¶ 3-5.)  Plaintiff attests

19  that Defendant Attygalla refused to refer Plaintiff to an eye specialist and a kidney specialist, or

20  issue a bottom bunk-lower tier chrono, from March 10, 2004 to May 15, 2004.  (Pl.'s Decl. In

21  Opp'n Of Def. Attygalla ¶ 8.)

22         On March 10, 2004, Plaintiff was examined by Defendant Attygalla at Lancaster State

23  Prison.[8]  (DUF 30.)  At that time, Defendant Attygalla noted that Plaintiff developed a right eye

24  iritis and conjunctivitis.[9]  (DUF 31.)  Defendant Attygalla attests that Plaintiff was continued on

25  _____

26      [8]  Defendants originally listed this date as "March 4, 2004."  This appears to be error, as Defendants and
    Plaintiff do not dispute that Plaintiff was transferred to Lancaster State Prison on March 10, 2004.

27      [9]  Plaintiff contends that he never had iritis or conjunctivitis, and that the problem arose only when he was
28  not given all three glaucoma medications.  Plaintiff is not a medical professional and thus cannot testify as to medical
    diagnoses. Fed. R. Evid. 701, 702.  Accordingly, Plaintiff fails to deny Defendants' statement of fact.  It is unclear

1  his glaucoma medications, including Alphagan, Timoptic, and Travatan. (DUF 32.)
2  Continuation of medications is the appropriate medical treatment for Plaintiff's condition. (DUF
3  33.) Plaintiff attests that on March 11, 2004, Defendant Attygalla discontinued Alphagan and
4  Xalatan prescriptions. (Pl.'s Mem. P. &. A. ¶ 9.) Plaintiff attests that on March 24, Defendant
5  Attygalla stopped glaucoma medication and prescribed Prednilosone for an eye infection. (Pl.'s
6  Mem. P. & A. ¶ 10.) Plaintiff attests that twenty-seventy days later, Defendant Attygalla
7  prescribed Alphagan only. (Pl.'s Mem. P. & A. ¶ 12.)

8       On March 22, 2004, Plaintiff had right iritis and conjunctivitis and was still taking
9  PredForte (steroid), Mydriacil and Diamox. (DUF 34.) Plaintiff's right intraocular pressure was
10 22 mm. (DUF 35.)

11      According to Doctor Kaye, as of April 5, 2004, Plaintiff's glaucoma was controlled by
12 Alphagan, Timoptic and Travatan. (DUF 36.) Plaintiff attests that he never received all three
13 medications. (Pl.'s Decl. In Opp'n David Kaye ¶ 4.) Plaintiff was taking PredForte drops for his
14 right eye. (DUF 37.) Plaintiff's eye pressure on April 22, 2004 was 14 mm in the right eye.
15 (DUF 38.) The intraocular pressure ranged between 14 and 22 mm for the month of April 2004,
16 during which time Plaintiff's eye was inflamed. (DUF 39.) Plaintiff's iritis was not caused by
17 any treatment or lack of treatment for glaucoma. (DUF 40.) The steroid medications did not
18 increase or decrease Plaintiff's eye pressure. (DUF 41.)[10]

19      Defendant Attygalla attest that Attygalla's medical treatment was appropriate and within
20 the standard of reasonable care for ophthalmology. (DUF 53.) At no time did Defendant
21 Attygalla refuse Plaintiff medical treatment that Plaintiff needed. (DUF 54.)

22      **D.    California Substance and Treatment Facility**

23      Plaintiff has been at CSATF from May 18, 2004 - March 9, 2007; April 11, 2006- August

24

25  whether Plaintiff admits he developed iritis and conjunctivitis later while in prison.

26      [10] Plaintiff contends that the steroid medication was bad for Plaintiff's glaucoma, citing to a letter from
27  doctor Schwab, an ophthalmologist who examined Plaintiff on August 21, 2008. (Pl.'s Opp'n, Ex. K.) According to
    doctor Schwab, Plaintiff may be a steroid responder, and doctor Schwab thus reduced the use of steroid eye drops.
28  (Ex. K1.) Plaintiff cites to no other evidence to indicate that Plaintiff's eye pressure was increased or decreased by
    the steroid medication. Thus, Plaintiff fails to deny Defendants' undisputed fact.

1   4, 2008; and August 16, 2008 to present.  (DUF 29.)

2          Defendant Adams was the warden at California Substance Abuse and Treatment Facility

3   ("CSATF") from July 20, 2000 to January 10, 2006. (DUF 14.)[11]  Defendant Adams was not

4   involved in Plaintiff's medical care or treatment.  (DUF 15.)  At no time did Defendant Adams

5   prevent Plaintiff from receiving medical care or treatment.  (DUF 16.)   Plaintiff attests that

6   Defendant Adams had a duty to not house inmates with disabilities such as Plaintiff's in an open

7   dormitory.  (Pl.'s Decl. In Opp'n Def. Adams ¶ 3.)

8          Defendants Wu and McGuinness are medical doctors licensed by the State of California

9   and in good standing with the California Medical Board.  (DUF 18.)  Defendants Wu and

10  McGuiness were employed by the CDCR at CSATF during the relevant time.  (DUF 19.)

11  Defendants attest that at no time did Defendants Wu or McGuiness prevent Plaintiff from

12  receiving medical treatment for his eye condition or kidney stones.  (DUF 20.)

13         Plaintiff attests that on May 24, 2004 and June 14, 2004, Defendant Wu referred Plaintiff

14  to an eye specialist.  (Pl.'s Decl. In Opp'n Def. Wu ¶ 4.)[12]  Defendant Wu consistently refused to

15  comply with recommendations by Dr. Kazi.  (Pl.'s Decl. In Opp'n Def. Wu ¶ 14.)  Plaintiff

16  complained to Defendant Wu that he was experiencing pain from his kidney conditions.  (Pl.'s

17  Decl. In Opp'n Def. Wu ¶ 18.)  Plaintiff attests that Defendant Wu only referred him to a

18  urologist, not a kidney specialist, and refused to issue a double mattress chrono to alleviate

19  Plaintiff's back pain.  (¶ 19.)  Plaintiff attests that Defendant McGuinness did not accept other

20  doctors' recommendations regarding a cornea transplant for Plaintiff.  (Pl.'s Decl. In Opp'n Def.

21  McGuinness ¶¶ 5, 14.)

22         Defendant McGuinness began working at CSATF in June of 2005; her position was Chief

23  Medical Officer ("CMO").  (DUF 22.)  Defendant McGuinness left CSATF in October 2006.

24

25         [11]  Contrary to Defendants' contention, Defendant Adams is sued in both his individual and official
26  capacities. (Compl. ¶ 12.)

27         [12]  There appears to be conflict between Plaintiff's verified complaint and Plaintiff's declaration as to
    whether the referral to an eye specialist was routine or urgent.  Exhibits submitted in support of Plaintiff's verified
    complaint indicate that Defendant Wu submitted an urgent request.  (Pl.'s Compl., Ex. D.)  This conflict is ultimately
28  immaterial here.

1    (DUF 23.)  As CMO, Defendant McGuinness oversaw the clinicians in the medical department

2    and reviewed inmate appeals concerning medical complaints.  (DUF 24.)  Defendant

3    McGuinness attests that she was involved in Plaintiff's medical care at an administrative level

4    only. (DUF 25.)  Plaintiff attests that Defendant McGuinness did speak with Plaintiff regarding

5    his condition.  (Pl.'s Mem. P. & A. ¶ 39.) Defendant McGuinness reviewed some of Plaintiff's

6    inmate appeals regarding his eye condition and kidney stones.  (DUF 26.)

7         On June 18, 2004, doctor Kazi, an ophthalmologist, recommended a trabeculectomy on

8    Plaintiff's right eye. (DUF 42.)  Plaintiff continued on Alphagan, Timoptic, and Xalatan for his

9    glaucoma. (DUF 43.)  As of September 10, 2004, Plaintiff's intraocular pressure was controlled.

10   (DUF 44.)[13]

11        On September 22, 2004, Plaintiff developed right iritis, which doctor Kaye attests had

12   been diagnosed prior to his incarceration. (DUF 45.)  Plaintiff attests that Doctor Stainer,

13   Plaintiff's doctor prior to incarceration, never treated Plaintiff for iritis.  (Pl.'s Decl. In Opp'n

14   David Kaye ¶ 3.) Plaintiff was treated with PredForte, Mydiasol, and Diamox tablets and his

15   pressure was 22 in the right eye. (DUF 46.)  Doctor Kaye attests that on September 23, 2004,

16   Plaintiff underwent a trabeculectomy.  (DUF 47.)  Plaintiff attests that he underwent a

17   trabeculectomy on September 29, 2004.  (Pl.'s Decl. In Opp'n David Kaye ¶ 8.)  Following the

18   trabeculectomy, doctor Clark found pressures to be 16 in the right eye and 4 in the left eye.

19   (DUF 48.)  Doctor Kaye attests that doctor Clark did not recommend a corneal transplant, but

20   suggested a second opinion.  (DUF 49.)  Plaintiff attests that doctor Clark did recommend a

21   cornea transplant.  (Pl.'s Opp'n, Ex. A21b.)  On January 11, 2005, Plaintiff's pressures were

22   recorded as 6 mm.  (DUF 50.)

23        Plaintiff's intraocular pressure remained excellent until September 11, 2006.  (DUF 51.)

24   Doctor Kaye attests that there is no medical evidence that Defendants Attygalla, Shen, Wu, or

25

26        [13] Plaintiff contends that his intraocular pressure was not controlled, citing to Exhibit A14, CDC 7362
     Health Services Form dated August 17, 2004.  Plaintiff had a right eye intraocular pressure of 39 at that time.
27   Plaintiff's intraocular eye pressure remained at 39 on August 28, 2004.  (Pl.'s Opp'n, Ex. A15.)  None of this
     evidence disputes Defendants' contention that Plaintiff's intraocular eye pressure was controlled as of September 10,
28   2004.  Plaintiff fails to deny Defendants' statement of fact.

1   McGuinness caused Plaintiff to suffer any loss of vision.  (DUF 52.)  Plaintiff attests that the

2   denial of proper medication resulted in nerve damage to Plaintiff's eyes.  (Pl.'s Decl. In Opp'n

3   David Kaye ¶ 19.)

4        Defendant Wu attests that his medical treatment was appropriate and within the standard

5   of reasonable care.  (DUF 55.)  Defendant Wu made several referrals for ophthalmology consults

6   and maintained Plaintiff on the appropriate medications for his eye condition. (DUF 56.)

7   Defendant Wu attests that at no time did Defendant Wu refuse Plaintiff medical treatment that

8   Plaintiff needed. (DUF 57.)  Plaintiff attests that Defendant Wu failed to ensure that Plaintiff see

9   Doctor Kazi for a follow-up regarding his intraocular pressure on June 25, 2004, and Plaintiff did

10  not see doctor Kazi until July 30, 2004.  (Pl.'s Decl. In Opp'n Wu ¶¶ 7, 8.)  Plaintiff attests that

11  there were delays in receiving glaucoma medication and other recommended medication.  (*Id.* ¶

12  6, 14-15.)

13       Defendant McGuinness attests that she did not refuse medical treatment which Plaintiff

14  needed.  (DUF 60.)  Defendant McGuinness attests that her decisions were appropriate and

15  within the standard of reasonable medical care.  (DUF 61.)  Plaintiff attests that Defendant

16  McGuinness denied him a corneal transplant.  (Pl.'s Decl. In Opp'n McGuinness ¶ 5.)  Plaintiff

17  attests that Defendant McGuinness refused to issue him a chrono to live in a cell as opposed to an

18  open dormitory.  (*Id.* ¶ 6.)  Plaintiff attests that Defendant McGuinness refused to issue a chrono

19  for Plaintiff to be excused from attending school because he could not see.  (Pl.'s Opp'n, Ex.

20  H3.)

21       Doctor Kaye attests that the loss of vision in both eyes is caused by Plaintiff's

22  longstanding glaucoma.  (DUF 62.)  Plaintiff's loss of vision existed prior to his incarceration.

23  (DUF 63.)[14]  Plaintiff attests that the loss of his vision is due to Defendants' medical actions in

24  failing to provide all three glaucoma medications, as stated above.  Doctor Kaye attests that

25  Plaintiff suffered recurrent iritis in the right eye which is documented prior to his incarceration.

26  _____

27  [14] Plaintiff contends he did not have optical nerve damage prior to his incarceration.  This does not address
the issue of whether Plaintiff lost vision prior to his incarceration or not.  Plaintiff clearly contends that his vision got

28  worse while incarcerated.  However, Defendants' position appears to be that Plaintiff had vision issues before his
incarceration.

1   (DUF 64.)  Plaintiff attests that doctor Stainer did not prescribe treatment for any iritis.  Doctor

2   Kaye attests that the motorcycle accident appears to have resulted in failure of Plaintiff's left

3   corneal transplant. (DUF 65.)  Plaintiff contends his motorcycle accident was in 1989, and did

4   not affect his corneal transplant.  There is no clear medical evidence to show that Plaintiff's

5   glaucoma or recurrent iritis was caused by any medical provider.  (DUF 66.)  There is no medical

6   evidence that Plaintiff did not respond to generic medications prescribed for his eye complaints

7   or that those medications were contraindicated. (DUF 67.)

8       **E.     Kidney Issues**

9       Beginning in 2004, Plaintiff was under the care of urologists.  (DUF 68.)  Multiple

10  procedures were undertaken in an attempt to treat his kidney stones.  (DUF 69.)  On June 7,

11  2004, Plaintiff underwent cystoscopy, stent placement, and short wave lithotripsy by doctor

12  Rajendra Dwivedi. (DUF 70.)  On July 12, 2004, August 8, 2004, September 13, 2004, January

13  2, 2005, February 7, 2005, March 7, 2005, April 4, 2005, May 9, 2005, and July 11, 2005,

14  Plaintiff underwent shock wave lithotripsy by doctor Rajenda Dwivedi. (DUF 71.)[15]  On January

15  14, 2006, Plaintiff had a consultation with urologist doctor Roger Low, M.D. at UC Davis.

16  (DUF 72.)  Doctor Low performed ureteroscopy stone removal with replacement of stent.  (DUF

17  73.)  On April 5, 2006, Plaintiff underwent stent removal at UC Davis by doctor Low with

18  recommendations for stone treatment sent to doctor Bhat.  (DUF 74.)  Plaintiff was under the

19  constant care of urology specialists who were addressing his kidney stone problem.  (DUF 75.)[16]

20  Medullary sponge kidney is not a condition where the stone disease can be cured, but rather the

21  doctors attempt to manage it.  (DUF 76.)

22      Doctor Taylor attests that there is no medical evidence that Defendant Shen failed to treat

23  or address Plaintiff's complaints of kidney stones.  (DUF 77.)  Plaintiff attests that Defendant

24  Shen made no medical referral for Plaintiff to see a urologist even after Plaintiff provided

25  Defendant Shen with his medical records, and refused to issue a lower-bunk chrono to prevent

26

27      [15]  Defendants listed the first date as "July 12, 2007."  The Court presumes that this is error.

28      [16]  Plaintiff contends that he continues to have problems with kidney stones.  Addressing the problem does
not necessarily mean that Plaintiff's kidney stones will cease being a problem.  This objection is overruled.

1  Plaintiff further harm.  (Pl.'s Decl. In Opp'n Def. Shen ¶¶ 7-9.)  Doctor Taylor attests that there

2  is no medical evidence that Defendant Wu failed to treat or address Plaintiff's complaints of

3  kidney stones.  (DUF 78.)  Plaintiff attests that Defendant Wu refused to refer Plaintiff a kidney

4  specialist and only referred Plaintiff to a urologist; Defendant Wu also refused to issue a double

5  mattress chrono.  (Pl.'s Decl. In Opp'n Def. Wu ¶¶ 18-19.)  Doctor Taylor attests that there is no

6  medical evidence that Defendant McGuinness failed to treat or address Plaintiff's complaints of

7  kidney stones.  (DUF 79.)  Plaintiff attests that all Defendants failed to follow Dr. Roger Low's

8  recommendations, including a special diet, double mattress chrono, 24-hour urine test to better

9  diagnose the condition, or pain medication.  (Pl.'s Decl. In Opp'n Doctor Taylor ¶ 3.)  Defendant

10  Taylor attests that there is no medical evidence that Defendant Attygalla failed to treat or address

11  Plaintiff's complaints of kidney stones.  (DUF 80.)  Plaintiff attests that Defendant Attygalla

12  knew that Plaintiff suffered from pain due to kidney stones but refused to refer Plaintiff to a

13  kidney specialist or provide any treatment.  (Pl.'s Decl. In Opp'n Def. Attygalla ¶¶ 6-7.)  Doctor

14  Taylor contends that there is no medical evidence that Defendants Shen, Wu, Attygalla, or

15  McGuinness caused Plaintiff harm.  (DUF 81.)  Plaintiff contests this statement, as stated above.

16  **IV.**   **Analysis**

17       **A.**   **Deliberate Indifference To A Serious Medical Need**

18       The Eighth Amendment prohibits cruel and unusual punishment.  "The Constitution does

19  not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and

20  citation omitted).   A prisoner's claim of inadequate medical care does not rise to the level of an

21  Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal

22  civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate

23  indifference in doing so.'"  *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting

24  *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  The deliberate

25  indifference standard involves an objective and a subjective prong.  First, the alleged deprivation

26  must be, in objective terms, "sufficiently serious . . . ."  *Id.* at 834 (citing *Wilson v. Seiter*, 501

27  U.S. 294, 298 (1991)).  Second, the prison official must "know[] of and disregard[] an excessive

28  risk to inmate health or safety . . . ."  *Id.* at 837.

1    "Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060. "Under

2  this standard, the prison official must not only 'be aware of the facts from which the inference

3  could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the

4  inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have

5  been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no

6  matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175,

7  1188 (9th Cir. 2002)).

8      **B.    Eye Issues**

9          **1.    Defendant Adams**

10        Defendants contend that there is no *respondeat superior* liability for § 1983 claims, and

11  thus Defendant Adams is not liable. (Mot. Summ. J. 9:11-14.) Defendants contend that it is

12  undisputed that Defendant Adams was not involved in Plaintiff's medical care. (*Id.* at 9:14-15.)

13        Plaintiff contends that Defendant Adams failed to ensure that all inmates under his

14  custody receive adequate medical care. (Pl.'s Opp'n, Decl. In Opp'n Derral Adams.) Plaintiff

15  contends that Defendant Adams had a responsibility to ensure compliance under *Plata* and

16  *Armstrong*[17]. (*Id.*)

17        Having considered all evidence submitted in support, and construing facts in the light

18  most favorable to Plaintiff as the non-moving party, the undersigned finds that Plaintiff pleads at

19  most *respondeat superior* liability by Defendant Adams. Under § 1983, Plaintiff must

20  demonstrate that each defendant *personally* participated in the deprivation of his rights. *Jones v.*

21  *Williams*, 297 F.3d 930, 934 (9th Cir. 2002). The Supreme Court recently emphasized that the

22  term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a

23  misnomer. *Ashcroft v. Iqbal*, 129 S. Ct. 1237, 1949 (2009). "Government officials may not be

24  held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat*

25  *superior*." *Id.* at 1948. Rather, each government official, regardless of his or her title, is only

26  liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each

27

28
         [17] *Plata* and *Armstrong* refer to remedial plans that govern medical care and ADA (Americans with Disabilities Act) issues for inmates.

1  defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. *Id.*

2  at 1948-49.  Here, Plaintiff contends at most that Defendant Adams as the warden had a

3  responsibility to ensure that the prison medical staff at CSATF provided Plaintiff with adequate

4  medical care.  Such a claim amounts at most to *respondeat superior* liability, which is not

5  actionable under § 1983.  Accordingly, summary judgment should be entered in favor of

6  Defendant Adams.

7         **2.    Defendant McGuinness**

8        Defendants contend that Defendant McGuinness's involvement with Plaintiff's medical

9  care was limited to reviewing his inmate appeals.  (Mot. Summ. J. 9:20-21.)  Defendants contend

10  that Defendant McGuinness's mere action of reviewing Plaintiff's inmate appeal is insufficient

11  for a claim of supervisory liability.  (*Id.* at 10:5-10.)

12        Plaintiff attests that Defendant McGuinness actually saw Plaintiff on October 29, 2005.

13  Plaintiff requested removal or accommodations to be made because reading caused Plaintiff to

14  suffer migraines due to the strain on his eyes.  This request was denied.  Plaintiff attests that

15  Defendant McGuinness knew that Plaintiff was legally blind and failed to issue a chrono for

16  Plaintiff to live in a cell as opposed to an open dormitory, subjecting Plaintiff to harassment and

17  theft by other inmates.  Plaintiff also attests that Defendant McGuinness failed to order a corneal

18  transplant for Plaintiff, despite recommendations from two doctors outside of the prison

19  healthcare system.

20        For supervisory liability under § 1983, Plaintiff must demonstrate that supervisory

21  defendants personally participated in the alleged deprivation of rights, knew of the violations and

22  failed to act to prevent them, or promulgated or implemented a policy so deficient that the policy

23  itself is a repudiation of constitutional rights and is the moving force of the constitutional

24  violation.  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor v. List*, 880 F.2d 1040,

25  1045 (9th Cir. 1989).

26        Defendants' contention that Defendant McGuinness merely reviewed Plaintiff's appeal is

27  not borne out by the facts as construed in the light most favorable to the non-moving party.

28  Plaintiff was seen by Defendant McGuinness.  Plaintiff requested a chrono to be excused from

1   school, which was denied.  Plaintiff claims that Defendant McGuinness knew of Plaintiff's issues

2   with school, namely that reading without assistance caused Plaintiff to suffer migraine headaches

3   due to eye strain.  The question is whether Defendant McGuinness acted with deliberate

4   indifference when Plaintiff was denied a chrono removing Plaintiff from school.  Based on the

5   evidence submitted by all parties, Defendant McGuinness appears to have concluded that

6   Plaintiff could perform in school if the materials were sufficiently enlarged.  (Pl.'s Opp'n, Ex. H,

7   Second Level Response to Grievance No. SATF 05-3854.)  Even if Defendant McGuinness was

8   incorrect in her assessment, that would amount at most to negligence, not deliberate indifference.

9   There is no evidence which indicates a triable issue of material fact that Defendant McGuinness

10   knew of and disregarded a serious risk to Plaintiff's health in refusing to issue a chrono excusing

11   Plaintiff from school.

12       Construing all facts in light most favorable to the non-moving party, the undersigned

13   finds that there are no triable issues of material fact which indicate Defendant McGuinness knew

14   of and disregarded a serious risk to Plaintiff's health by denying Plaintiff housing in a cell as

15   opposed to an open dormitory.  Plaintiff's concerns about his safety in open dormitory housing

16   do not sufficiently link Defendant McGuinness to any act that caused the harm.  There are no

17   facts that support a finding that Defendant McGuinness was subjectively aware of harm resulting

18   from Plaintiff being housed in an open dormitory as opposed to a cell.  Judgment should be

19   entered in favor of Defendant McGuinness as to Plaintiff's claim regarding living in an open

20   dormitory as opposed to a cell.

21       As to Plaintiff's claim regarding a corneal transplant, the undersigned finds that there is

22   no triable issue of material fact.  Plaintiff contends that Defendant McGuinness failed to follow

23   other doctor's opinions regarding the necessity of a corneal transplant.  A difference of medical

24   opinion between medical professionals concerning the appropriate course of treatment generally

25   does not amount to deliberate indifference to serious medical needs.  *Toguchi*, 391 F.3d at 1059-

26   60.  To establish that a difference of opinion amount to deliberate indifference, Plaintiff "must

27   show that the course of treatment the doctors chose was medically unacceptable under the

28   circumstances and "that they chose this course in conscious disregard of an excessive risk to

1  [Plaintiff's] health." *Id.* at 1058 (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

2  Here, construing the facts in light most favorable to the non-moving party, Defendant

3  McGuinness reviewed Plaintiff's necessity for a corneal transplant.  There is no evidence to

4  support a finding that Defendant McGuinness was subjectively aware that a delay in a corneal

5  transplant would cause Plaintiff harm.  Even if Defendant McGuinness failed to meet medical

6  acceptable standard of care here, that would amount at most to medical negligence, not deliberate

7  indifference, and is not actionable under § 1983.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

8        It is also unclear what harm would occur for the delay in receiving a corneal transplant.

9  Vague claims of "pain and suffering" are insufficient at the summary judgment stage to

10  demonstrate a triable issue of material fact.  *See  Matsushita*, 475 U.S. at 587 ("Where the record

11  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

12  'genuine issue for trial.'").   Accordingly, summary judgment should be entered in favor of

13  Defendant McGuinness as to the denial of a corneal transplant.

14        **3.**     **Defendant Wu**

15        Defendant contends that he Wu made appropriate referrals for Plaintiff to see specialty

16  consultants.  (Defs.' Mot. Summ. J. 11:5-6.)  Defendants contend that at no time did Defendant

17  Wu prevent Plaintiff from receiving medical treatment that he believed Plaintiff required.  (*Id.* at

18  11:6-7.)  Plaintiff contends that Defendant Wu refused to follow doctor Kazi's recommendations.

19  Plaintiff attests that Defendant Wu failed to ensure that Plaintiff see doctor Kazi for a follow-up

20  regarding his intraocular pressure on June 25, 2004, and Plaintiff did not see doctor Kazi until

21  July 30, 2004.

22        Based on the submitted evidence, and construing the facts in the light most favorable to

23  the non-moving party, the undersigned finds that there are no triable issues of material fact as to

24  Defendant Wu's treatment for Plaintiff's eye issues.  Defendant Wu referred Plaintiff to an eye

25  specialist twice.  This would indicate that Defendant Wu took steps to provide medical care for

26  Plaintiff.  *See Hoptowit*, 682 F.2d at 1253 (if prison medical staff is not competent to examine,

27  diagnoses, and treat inmate's problems, they must "refer prisoners to others who can").

28        Plaintiff's main complaints with Defendant Wu concern delays, including: 1) Defendant

1   Wu's delay of Plaintiff's follow-up with Doctor Kazi by a month, 2) receiving glaucoma

2   medication ten days later, and 3) receiving recommended medication sixty days later.  (Pl.'s

3   Decl. In Opp'n Def. Wu ¶¶ 6-8, 14-16.)[18]

4           There are no triable issues of material fact as to whether Defendant Wu consciously

5   disregarded a serious risk to Plaintiff's health.  Plaintiff's claims amount at most to medical

6   negligence, which is not actionable as deliberate indifference under § 1983.  *Estelle*, 429 U.S. at

7   106.  Accordingly, summary judgment should be entered in favor of Defendant Wu as to

8   Plaintiff's claims regarding medical treatment for his eye.

9                           **4.      Defendant Shen**

10          Defendant Shen contends that he made appropriate referrals for Plaintiff to see speciality

11  consultants, and did not prevent Plaintiff from receiving medical care which he believed Plaintiff

12  required.  (Defs.' Mot. Summ. J. 10:23-26.)  Plaintiff contends that Defendant Shen gave

13  Plaintiff only one of three drugs for treatment of his glaucoma and did not refer Plaintiff to an

14  ophthalmologist.  (Pl.'s Decl. In Opp'n Def. Shen ¶ 4.)

15          Plaintiff's first claim consists of Defendant Shen providing only one of three drugs for

16  treatment of Plaintiff's glaucoma. Plaintiff explained to Defendant Shen that his glaucoma

17  treatment required three drugs, not one, but Defendant Shen refused, resulting in damage to

18  Plaintiff's eyes.  Plaintiff however cannot testify as to medical diagnoses, as he is not an expert.

19  Fed. R. Evid. 701, 702.  There is no triable issue of fact to support a finding that Defendant Shen

20  acted with conscious disregard as to Plaintiff's glaucoma when he prescribed only one of the

21  three drugs.  Plaintiff's claim as to the drug treatment is at most medical negligence, not

22  deliberate indifference, and not actionable here.

23          Plaintiff also contends that Defendant Shen refused to refer Plaintiff to any

24  ophthalmologists during the time Plaintiff resided at Wasco State Prison.  Unfortunately for

25  Plaintiff's claim, there is no triable issue of material fact as to the need for an ophthalmologist.

26

27          [18]  There is no triable issue of material fact as to Plaintiff's complaint regarding being housed in an open
    dormitory as opposed to a cell.  Like his claim against Defendant McGuinness, Plaintiff fails to demonstrate any
28  facts indicating that Defendant Wu had subjective awareness of any harm that would result to Plaintiff from being
    housed in an open dormitory.

1   There is no evidence indicating that Defendant Shen had subjective knowledge of harm and

2   consciously disregarded it when he failed to refer Plaintiff.  Construing the facts in light most

3   favorable to the non-moving party, the undersigned finds that there are no triable issues of

4   material fact as against Defendant Shen for treatment of Plaintiff's eye issues. Accordingly,

5   summary judgment should be entered in favor of Defendant Shen for Plaintiff's claims regarding

6   his eye.

7                          **5.       Defendant Attygalla**

8           Defendant Attygalla contends he made appropriate referrals for Plaintiff to see speciality

9   consultants, and did not prevent Plaintiff from receiving medical care which he believed Plaintiff

10  required. (Defs.' Mot. Summ. J. 11:14-16.)  Plaintiff contends that Defendant Attygalla was

11  aware of Plaintiff's glaucoma, but treated Plaintiff only for iritis, and provided only one of the

12  three drugs for treatment of his glaucoma.  (Pl.'s Decl. In Opp'n Def. Attygalla ¶¶ 3-4.)

13  Defendant Attygalla also failed to refer Plaintiff to an eye specialist.  (*Id.* ¶ 5.)

14          Again, the evidence before this Court demonstrates at most medical negligence, not

15  deliberate indifference.  Plaintiff received treatment for his glaucoma by receiving one of the

16  recommended drugs, and was also treated for iritis.  Even if Defendant Attygalla was deficient in

17  the prescription of medical treatment, that amounts at most to medical negligence.   There is no

18  evidence which indicates that Defendant Attygalla was aware of harm to Plaintiff and acted in

19  conscious disregard.  Construing the facts in light most favorable to the non-moving party, the

20  undersigned finds that there are no triable issues of material fact as against Defendant Attygalla

21  for treatment of Plaintiff's eye issues.  Accordingly, summary judgment should be entered in

22  favor of Defendant Attygalla as to Plaintiff's claims regarding his eye.

23      **C.      Kidney Issues**

24              **1.       Defendant Adams**

25          There is no triable issue of material fact against Defendant Adams for Plaintiff's kidney

26  issues.  As stated previously, Plaintiff's claim against Defendant Adams is premised on

27  *respondeat superior* liability, which is not actionable under § 1983.

28  ///

### 2.   Defendant McGuinness

Defendants raise the same arguments that they raised regarding Defendant McGuinness and her treatment of Plaintiff's eye issues.  Plaintiff contends that Defendant McGuinness refused to prescribe kidney stone medication for Plaintiff that would have reduced the amount of Plaintiff's kidney stones.  (Pl.'s Mem. P. & A. ¶ 44.)  Plaintiff contends that Defendants refused to provide Plaintiff with any pain medication to ease his discomfort.  Construing the facts in the light most favorable to the non-moving party, the undersigned finds that there is a triable issue of material fact as to whether Defendant McGuinness's treatment of Plaintiff's kidney issues was deliberately indifferent.

### 3.   Defendant Wu

Defendants raise the same argument, namely that there is no evidence Defendant Wu failed to treat or address Plaintiff's kidney issues.  Plaintiff attests that Defendant Wu knew Plaintiff had over 100 kidney stones and only referred Plaintiff to a urologist.  (Pl.'s Decl. In Opp'n Def. Wu ¶ 18.)  Plaintiff attests that he was experiencing extreme pain in his back from the kidney stones, and Defendant Wu refused to issue a double mattress chrono to help relieve the pain.  (*Id.* ¶ 19.)

Construing the evidence in light most favorable to the non-moving party, there exists a triable issue of fact as to whether Defendant Wu was deliberately indifferent to Plaintiff's needs regarding his kidney issues.  As stated previously, a difference of medical opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs.  *Toguchi*, 391 F.3d at 1059-60.  To establish that a difference of opinion amount to deliberate indifference, Plaintiff "must show that the course of treatment the [defendant] doctors chose was medically unacceptable under the circumstances and "that they chose this course in conscious disregard of an excessive risk to [Plaintiff's] health."  *Id.* at 1058 (citing *Jackson*, 90 F.3d at 332).  However, construing the facts in the light most favorable to the non-moving party, there is a triable issue of fact as to whether Defendant Wu provided any treatment for Plaintiff's kidney issues.  There are thus triable issues of material fact as to Plaintiff's claims against Defendant Wu for Plaintiff's kidney issues that

19

1  precludes a finding of summary judgment as to this claim.

2          **4.      Defendant Shen**

3          Defendants raise the same argument, namely that there is no evidence Defendant Shen

4  failed to treat or address Plaintiff's kidney issues.  Plaintiff attests that he showed Defendant

5  Shen his medical records that he had over 100 kidney stones per kidney, but Defendant Shen

6  refused to refer Plaintiff to see a urologist or to issue a lower bunk chrono to prevent harm to

7  Plaintiff during his time at Wasco State Prison.  (Pl.'s Decl. In Opp'n Def. Shen ¶¶ 8-9.)

8  Construing the facts in the light most favorable to the non-moving party, there is a triable issue of

9  material fact as to whether Defendant Shen provided any treatment for Plaintiff's kidney issues.

10          **5.      Defendant Attygalla**

11          Defendants raise the same argument, namely that there is no evidence Defendant

12  Attygalla failed to treat or address Plaintiff's kidney issues.  Plaintiff attests that Defendant

13  Attygalla, despite knowing that Plaintiff had over 100 kidney stones per kidney, and that the

14  condition caused extreme pain for Plaintiff, failed to refer Plaintiff to see a kidney specialist, or

15  provide any treatment for his kidney stones during his time at Lancaster State Prison, including

16  refusal to issue a lower bunk chrono.  (Pl.'s Decl. In Opp'n Def. Attygalla ¶¶ 6-8.)  Construing

17  the facts in the light most favorable to the non-moving party, there is a triable issue of fact as to

18  whether Defendant Attygalla provided any treatment for Plaintiff's kidney issues

19  **V.      Conclusion And Recommendation**

20          Based on the foregoing, it is HEREBY RECOMMENDED that

21          1.      Defendants' motion for summary judgment, filed November 19, 2009, should be

22                  GRANTED as to Defendant Adams for all claims, and as to Defendants Shen,

23                  Wu, Attygalla, and McGuinness for Plaintiff's claims regarding medical treatment

24                  for his eye; and

25          2.      Defendants' motion should be DENIED as to Plaintiff's claims against

26                  Defendants Shen, Wu, Attygalla, and McGuinness for medical treatment of his

27                  kidneys.

28          These Findings and Recommendations will be submitted to the United States District

Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 18, 2010**              _____ **/s/ Dennis L. Beck**_____
                                         UNITED STATES MAGISTRATE JUDGE