1  JONATHAN A. SHAPIRO (257199)
   MATTHEW D. BENEDETTO (252379)
2  KATHLEEN MORAN (272041)
   WILMER CUTLER PICKERING HALE AND DORR LLP
3  950 Page Mill Road
   Palo Alto, CA 94304
4  Tel:    (650) 858-6000
   Fax:    (650) 858-6100
5  jonathan.shapiro@wilmerhale.com
   matthew.benedetto@wilmerhale.com
6  katie.moran@wilmerhale.com

7  Attorneys for Plaintiff
   CARLOS QUIROZ
8

9                    **IN THE UNITED STATES DISTRICT COURT**

10                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11                              **FRESNO DIVISION**

| | |
|---|---|
| 12  CARLOS QUIROZ, | )  Case No. 1:06-CV-01426-AWI-DLB (PC) |
|  | ) |
| 13          Plaintiff, | ) |
|  | )  **PRETRIAL STATEMENT OF PLAINTIFF** |
| 14      vs. | )  **CARLOS QUIROZ SUBMITTED** |
|  | )  **PURSUANT TO LOCAL RULE 281** |
| 15  CALIFORNIA DEPARTMENT OF | ) |
| CORRECTIONS AND REHABILITATION, | )  Pretrial Conf.:  February 1, 2012 |
| 16  et al. | )  Trial Date:      March 6, 2012 |
|  | )  Action Filed:   October 16, 2006 |
| 17          Defendants. | ) |
| 18 | ) |

19                              **INTRODUCTION**

20          Plaintiff Carlos Quiroz hereby files this Pretrial Statement in accordance with Local Rule

21  281.  Plaintiff, a former prisoner in the custody of the California Department of Corrections and

22  Rehabilitation (hereafter, "CDCR"), proceeds in this civil rights action under 42 U.S.C. § 1983.

23  Plaintiff alleges, and will prove at trial, that Defendants Dr. Chyi Shen and Dr. Mallika Attygalla,

24  while employed by the CDCR and working on its behalf to provide medical treatment to state

25  prisoners in its custody, violated his federally protected rights under the Eighth Amendment by

26  acting with deliberate indifference to his serious medical needs.

27

28
                                              1

In an order dated September 16, 2010, the Court adopted in part the Magistrate's findings and recommendations (Docket No. 41) regarding Defendants' summary judgment motion (Docket No. 26). The Court permitted Plaintiff's claims against Defendants Shen and Attygalla to go forward, finding that there remained a triable issue of material fact as to whether Defendants Shen and Attygalla were deliberately indifferent to Plaintiff's serious medical needs regarding treatment of his kidney stones at Wasco State Prison and Lancaster State Prison. (Docket No. 41, p. 7:4-11)

## I.     JURISDICTION AND VENUE

This action is brought pursuant to 42 U.S.C. § 1983. Therefore, the Court's jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(a)(3). This Court's jurisdiction is not disputed.

A substantial portion of the events giving rise to the claims alleged in Plaintiff's Complaint arose in Kern County and Kings County, in the State of California. Therefore, venue is proper under 28 U.S.C. § 1391(b)(2).

## II.    JURY – NON-JURY

All parties have made a demand for a Trial by Jury. A jury trial has been scheduled for March 6, 2012 (Docket No. 90).

## III.   UNDISPUTED FACTS

Plaintiff submits that the following facts are undisputed:

      a. Plaintiff has a condition known as medullary sponge kidney, a painful condition that causes his kidneys to produce multiple kidney stones.

      b. Medullary sponge kidney results in multiple calcifications forming primarily in the parenchyma or body of the kidney substance which sometimes work their way into the collecting system of the kidney, pass into the ureters, and cause pain.

      c. Plaintiff was incarcerated at Wasco State Prison from November 14, 2003 to March 10, 2004.

      d. Plaintiff was incarcerated at Lancaster State Prison from March 10, 2004 to May 18, 2004.

2

e. At all times relevant to Plaintiff's claims, Defendant Shen, license #AFE32786, was a medical doctor licensed by the State of California and in good standing with the California Medical Board.

f. Defendant Shen was employed by the CDCR, and treated Plaintiff's medical issues at Wasco State prison.

g. On January 3, 2004, Defendant Shen referred Plaintiff for a consultation at Mercy Hospital.

h. At no relevant time did Defendant Shen refer Plaintiff to a urology specialist.

i. At no relevant time did Defendant Shen order the appropriate bed chrono to prevent harm to Plaintiff.

j. Despite common knowledge that kidney stones are extremely painful, Dr. Shen failed to prescribe Plaintiff pain medication to control his pain.

k. At the time that she treated Plaintiff, Defendant Attygalla, license #A36990, was a medical doctor licensed by the State of California and in good standing with the California Medical Board.

l. Defendant Attygalla was employed by the CDCR and treated Plaintiff while he was incarcerated at Lancaster State Prison during the relevant time.

m. On August 6, 2008, the Executive Director of the Medical Board of California lodged a formal Accusation against Dr. Attygalla for incompetence under California Business and Professions Code Sections 2227 and 2234. The Accusation arose as a result of Dr. Attygalla's participation and poor scoring in clinical assessment programs ("QICM"), in July and November 2006, required for physicians employed by the CDCR. As a result of her poor scores in this program, Dr. Attygalla was found by the Medical Board to be "incompetent to practice medicine safely in that she lacks the knowledge and clinical ability to completely function as a physician and surgeon." (In the Matter of the Accusation Against Mallika Attygalla, M.D., File No. 05-2006-178683, Medical Board of California, Department of Consumer Affairs State of California).

3

n. On December 22, 2009, Defendant Attygalla admitted to the truth of all charges in the Accusation and submitted to the disciplinary order of the Medical Board of California, which became effective on March 27, 2009.

o. On December 29, 2009, Defendant Attygalla voluntarily surrendered her medical license and is no longer permitted to practice medicine in the State of California.

p. At no time did Defendant Attygalla refer Plaintiff to a kidney specialist, or issue a bottom bunk-lower tier chrono, which would have helped to ease the severe pain Plaintiff was experiencing due to his kidney condition.

q. Despite common knowledge that kidney stones are extremely painful, Dr. Attygalla failed to prescribe Plaintiff pain medication to control his pain.

r. At all relevant times, it was common knowledge that kidney stones cause severe pain and that the prescription of pain medication is medically necessary to manage such severe pain.

s. At all relevant times, it was the accepted and common knowledge within the CDCR Health Care Services Department that:

- Kidney stones are small, solid particles that form in one or both kidneys and sometimes travel into the ureter (slender muscular tubes that carry urine from the kidneys to the urinary bladder). Stones vary from the size of a grain of sand to a golf ball, and there may be one or several. Kidney stones usually affect adults over age 30, of both sexes, but more often occur in men. Kidney stones may be caused by excess calcium in the urine caused by a disturbance in the parathyroid gland, which upsets calcium metabolism; or by excess calcium or vitamin D intake; or a blockage of urine from any cause.

- Frequent signs and symptoms include: Episodes of severe, colicky (intermittent) pain every few minutes. The pain usually appears first in the back, just below the ribs. Over several hours or days, the pain follows the stone's course through the ureter toward the groin. Pain stops when

4

the stone passes.  You may have nausea, traces of blood in urine or your urine may appear cloudy or dark.

- Risk increases with: hyperparathyroidism; family history of kidney stones; bed confinement for any reason; improper diet (too much calcium); excess alcohol consumption; decreased urine volume due to dehydration or hot, dry weather.

- Preventive measures include: drink 3 quarts of fluid every day; avoid milk and milk products if you have had a calcium or phosphorus kidney stone; avoid excessive sweating.

- Expected outcomes: Large stones usually remain in the kidney without symptoms, although they can damage the kidney.  Small stones pass easily into the ureter through the urine.  Stones that are big enough to pass but not small enough to pass with ease cause excruciating pain.  These usually pass in a few days. If the stone stops and blocks urine, it must be removed to prevent further kidney damage.

- Possible complications: urinary tract infection; damage to the kidney, necessitating surgical removal; recurrence of stones.

- General treatment measures: Strain all urine through filter paper or gauze to detect passage of the stone.  Take stone to the doctor for composition analysis.  Diagnostic test may include urinalysis and urine culture, X-ray of the abdomen, kidney ultrasound, CT scan, and intravenous urography (method of studying the kidneys and urinary tract by injecting a medication into the bloodstream that X-rays can detect).  Small solitary stones, uncomplicated by obstruction or infection, may need no specific treatment.  Treatment to remove larger stones, if they don't pass spontaneously, and are causing complications, infection or severe pain.  Options include chemical dissolution, endourologic stone extraction, percutaneous nephrolithotomy, extracorporeal shock wave lithotripsy, and

5

rarely, open surgery.  Stones due to excess calcium in the body may require surgical removal of abnormal parathyroid tissue.

- Medications that may be prescribed include: pain relievers, antispasmodics to relax the ureter muscles and help the stone pass and depending on the type of stone (calcium-containing, struvite stones, cystine stones, uric acid or other composition), medication may be prescribed that will stop the growth of existing stones or new stones.  This often involves a prolonged program, and your compliance is important.  Take all medications as directed.

- Contact Health Care Services if:  You have symptoms of a kidney stone; temperature rises to 101ºF; symptoms of a kidney infection develop (stinging, burning, or urination or a frequent urge to urinate); new, unexplained symptoms develop – drugs used in treatment may produce side effects.  (CDCR Health Care Services Division, Patient Health Care Education (Revised May 10, 2004))

t.   On June 7, 2004, Plaintiff was finally referred to urologist, Dr. Rajendra Dwivedi.

## IV.   DISPUTED FACTUAL ISSUES

Plaintiff submits that the following facts are disputed:

a.   With regard to medullary sponge kidney, medical providers can act to prevent or delay the formation of calcifications.  Prevention is a very important factor so as to avoid severe pain from the kidney stones that form from these calcifications.  The only way to prevent the formation of kidney stones is to perform a 24-hour urine test to determine why the body is building stones.

b.   Medullary sponge kidney is not a curable condition, but may be managed through medical treatment.  At all relevant times, the Defendants failed to provide this appropriate medical treatment.

c.   At all relevant times, Plaintiff was not under the care of urologists.

6

1

2       d.  At all relevant times, Defendant Shen prevented Plaintiff from receiving adequate medical treatment for his kidney condition.

3       e.  At all relevant times, Defendant Attygalla prevented Plaintiff from receiving adequate medical treatment for his kidney condition.

4

5       f.  At all relevant times, Defendant Shen refused to order the appropriate bed chrono for Plaintiff's kidney condition, seriously risking Plaintiff's health and safety.

6

7       g.  At all relevant times, Defendant Attygalla refused to order the appropriate bed chrono for Plaintiff's kidney condition, seriously risking Plaintiff's health and safety.

8

9

10       h.  At all relevant times, Defendant Shen refused Plaintiff the medical treatment that Plaintiff required for his kidney condition, causing him severe and unnecessary pain. Defendant Shen failed to treat Plaintiff or refer him to a urology specialist. Defendant Shen was aware of the fact that Plaintiff had in excess of 100 kidney stones and had previously been under the care of Dr. Stone, but was indifferent to Plaintiff's medical needs and the severe pain that Plaintiff was experiencing due to these kidney stones.

11

12

13

14

15

16

17       i.  Defendant Shen did not refer Plaintiff for a urology consult on November 26, 2003.

18

19       j.  On January 9, 2004, Defendant Shen recommended that Plaintiff be treated by a urologist, but never filled out the required referral forms.

20

21       k.  Plaintiff was not seen by Dr. Stone for a urology consult on January 21, 2004.

22       l.  At all relevant times, Defendant Attygalla refused Plaintiff the medical treatment that Plaintiff required, causing him severe and unnecessary pain in his kidneys. Defendant Attygalla failed to treat Plaintiff and/or refer him to a urology specialist. Defendant Attygalla was aware of the fact that Plaintiff had in excess of 100 kidney stones and had previously been under the care of Dr. Stone, but was indifferent to Plaintiff's medical needs and the severe pain that Plaintiff was experiencing due to these kidney stones.

23

24

25

26

27

28

7

PRETRIAL STATEMENT OF PLAINTIFF CARLOS QUIROZ, PURSUANT TO LOCAL RULE 281 (CASE NO. 1:06-CV-01426-AWI-DLB (PC))

m. At all relevant times, Defendant Shen failed to give Plaintiff any treatment to prevent further kidney stone formation.

n. At all relevant times, Defendant Attygalla failed to give Plaintiff any treatment to prevent further kidney stone formation.

o. Plaintiff was first referred to a urologist in June 2004, after Plaintiff was transferred out of Lancaster State Prison. This was over seven months after Plaintiff complained to Defendants Shen and Attygalla, asking to see a urology specialist.

## V.    DISPUTED EVIDENTIARY ISSUES

Plaintiff anticipates the following evidentiary disputes, and respectfully requests that these issues be addressed by pretrial hearings and/or motions *in limine* to the extent the parties are unable to reach agreement:

a. The admissibility of, and extent to which the parties and/or witnesses may reference, Plaintiff's criminal conviction and/or the factual allegations and circumstances that led to his arrest and incarceration, including the length of Plaintiff's prison sentence;

b. The admissibility of, and extent to which the parties and/or witnesses may reference, the Plaintiff's medical records;

c. The admissibility of, and extent to which the parties and/or witnesses may reference, the Plaintiff's immigration status.

Plaintiff reserves his rights to contest the admissibility of any evidence offered by the Defendants. Any other evidentiary disputes that may arise can be resolved by this Honorable Court, orally, or if necessary, through motions *in limine*, provided Plaintiff is given time and opportunity to file such motions.

## VI.    RELIEF SOUGHT

Plaintiff seeks monetary damages in the form of general and punitive damages for injuries sustained and for pain and suffering resulting from Defendants Shen and Attygalla's deliberate

8

indifference to his serious medical needs.  Specifically, Plaintiff seeks the following amounts from the Defendants:

   a. Defendant Shen, M.D., at Wasco State Prison from November 2003 to March 2004: Ten Thousand Dollars ($10,000.00) per month for pain and suffering, for four (4) months, totaling Forty Thousand Dollars ($40,000.00);

   b. Defendant Attygalla, M.D., at Lancaster State Prison from March 2004 to May 2004: Ten Thousand Dollars ($10,000.00) per month for pain and suffering, for three (3) months, totaling Thirty Thousand Dollars ($30,000.00);

   c. Defendant Shen, M.D., at Wasco State Prison: Seventy Thousand Dollars ($70,000.00) in punitive damages;

   d. Defendant Attygalla, M.D., at Lancaster State Prison: Seventy Thousand Dollars ($70,000.00) in punitive damages;

   e. Two Hundred Thousand Dollars ($200,000.00) for future medical treatment;

   f. Reasonable attorney fees pursuant to 42 U.S.C. § 1988, as provided *infra* at XIX;

   g. All costs of this action; and

   h. Any other relief as the court may deem just and proper.

## VII.   POINTS OF LAW

Plaintiff contends that the Defendants acted with deliberate indifference to his federally protected right, under the Eighth Amendment, to be free from cruel and unusual punishment, and he brings this civil action for damages related to the deprivation of this right under 42 U.S.C. § 1983.

Accordingly, Plaintiff will prove that the Defendants violated his Eighth Amendment rights by showing (1) that his medical need was objectively serious; (2) that the Defendants were subjectively aware of a substantial risk of serious harm to the Plaintiff; and (3) that Plaintiff was in fact harmed by Defendants' deliberate indifference to his serious medical need.

As to the first prong, Plaintiff will show that his kidney condition was the kind of illness that a reasonable doctor would find important and worthy of treatment; that his kidney condition significantly affected his daily activities; and that his kidney condition caused chronic and

9

substantial pain.  As to the second prong, Plaintiff will show that Defendants knew of a substantial risk to Plaintiff's health and that Defendants acted or failed to act despite their knowledge of this substantial risk.  As to the final prong, Plaintiff will prove that the Defendants' medically inadequate care resulted in Plaintiff's harm, by showing that Defendants' delays in treatment or failures to treat resulted in unnecessary continuation and aggravation of Plaintiff's kidney condition, as well as chronic and substantial pain.

## VIII.  ABANDONED ISSUES

Plaintiff has not affirmatively abandoned any of the claims put forth in his Complaint.

## IX.  WITNESSES

Plaintiff hereby submits the following list of potential witnesses at trial:

a.  Carlos Quiroz                    Percipient Witness – Plaintiff

    Address:        C/O Counsel for Plaintiff, Matthew D. Benedetto

               Wilmer Cutler Pickering Hale and Dorr LLP

               350 South Grand Ave., Suite 2100, Los Angeles, CA 90071

b.  Chyi Shen, M.D.                  Percipient Witness – Defendant

    Address:        39 Wheeler Drive, Irvine, CA 92620

c.  Mallika Attygalla               Percipient Witness – Defendant

    Address:        1939 N. Hobart Blvd., Los Angeles, CA 90027

d.  Roger Low, M.D.                  Percipient Witness – Material

    Address:        4860 Y St., Suite 3500, Sacramento, CA 95817

e.  Rajendra Dwivedi, M.D.           Percipient Witness – Material

    Address:        632 W. Putnam Ave., Porterville, CA 93257

f.  James Bradley Taylor, M.D.       Percipient Witness – Expert for Defendants

    Address:        25200 La Paz Rd., Suite 200, Laguna Hills, CA 92653

g.  Bruce Stone, D.O.               Percipient Witness – Material

    Address:        1902 B St., Suite B, Bakersfield, CA 93301

10

Plaintiff respectfully reserves the right to call witnesses in person or by deposition, call additional witnesses for purposes of rebuttal, and to otherwise amend and/or supplement this witness list as necessary.  Plaintiff plans to call hostile witnesses in his case-in-chief.

## X.    EXHIBITS – SCHEDULES AND SUMMARIES

The Plaintiff currently expects to offer at trial the following documents:

      a.  Plaintiff's Complaint and attached Exhibits, as filed on 10/16/06;

      b.  Those exhibits relied upon during summary judgment, to which Defendants are also privy;

      c.  Those discovery, medical records, and correspondence documents contained in the compact disc "Quiroz, Carlos v. CA Dept. of Corrections PDF's," sent by Catherine Woodbridge Guess, Deputy Attorney General, on May 24, 2011, from California Department of Justice, Office of the Attorney General, Litigation Support Section;

      d.  Those medical records and other documents relied upon by Defendants' expert witness;

      e.  Front cover page, Introduction, and pertinent page regarding "Kidney Stones," published by the California Department of Corrections Health Care Services Division (May 10, 2004); and

      f.  Public Record, Accusation, In the Matter of the Accusation Against Mallika P. Attygalla, M.D., Case No. 05-2006-178683 (Aug. 6, 2008);

      g.  Public Record, Stipulated Settlement and Disciplinary Order, In the Matter of the Accusation Against Mallika P. Attygalla, M.D., Case No. 05-2006-178683 (Dec. 23, 2008);

      h.  Public Record, Decision, In the Matter of the Accusation Against Mallika P. Attygalla, M.D., Case No. 05-2006-178683 (Feb. 25, 2009);

11

i. Public Record, Agreement for Surrender of License, In the Matter of the

Accusation Against Mallika P. Attygalla, M.D., Case No. 05-2006-178683 (Dec.

29, 2009);

j. Public Record, Order for License Surrender During Probation, In the Matter of the

Accusation Against Mallika P. Attygalla, M.D., Case No. 05-2006-178683 (Jan.

29, 2010);

k. Plaintiff's Mercy Hospital Bakersfield Medical Records, including:

    i. History & Physical of Quiroz, Eduardo Carlos, Mercy Hospital

    Bakersfield Emergency Room, admitted 05/02/03, signed Bruce

    DO Stone, M.D.;

    ii. Operation Report of Quiroz, Eduardo Carlos, Mercy Hospital

    Bakersfield, dated 05/06/03, signed Bruce DO Stone, M.D.;

l. Plaintiff's Kern Medical Center Bakersfield Medical Records, including;

    iii. X-ray Report of Quiroz, Carlos, Kern Medical Center, dated

    10/07/03, signed Chester K. Lau, M.D.

m. Plaintiff's Wasco State Prison Medical Records from November 14, 2003 to

March 10, 2004;

n. Plaintiff's Wasco State Prison Medication Records from November 14, 2003 to

March 10, 2004;

o. Plaintiff's Lancaster State Prison Medical Records from March 10, 2004 to May

18, 2004;

p. Plaintiff's Lancaster State Prison Medical Ducats from March 10, 2004 to May

18, 2004;

q. Plaintiff's Lancaster State Prison Medication Records from March 10, 2004 to

May 18, 2004;

r. Plaintiff's California Substance Abuse Treatment Facility and State Prison

Medical Records from May 18, 2004 to September 3, 2009;

12

s. Plaintiff's California Substance Abuse Treatment Facility and State Prison 7252 Hx Report from May 18, 2004 to September 3, 2009;

t. University of California Davis, Doctor Roger Low's Urology Recommendations for Plaintiff from January 13, 2006 to November 4, 2009;

u. Defendant Shen's Response to Interrogatories, Set One, dated May 29, 2009;

v. Defendant Shen's Amended Responses to Interrogatories, Set One, dated October 22, 2009;

w. Defendant Attygalla's Response to Interrogatories, Set One, dated June 1, 2009;

x. Defendant Attygalla's Amended Responses to Interrogatories, Set One, dated October 22, 2009;

y. Laboratory Reports, dated December 2, 2003 to December 4, 2009;

z. Health Services Chronos;

aa. Patient Health Care Education Materials, Health Care Service Division of the California Department of Corrections;

bb. Diagram of Lancaster State Prison Cell;

cc. Diagram of Wasco State Prison Cell.

Plaintiff respectfully reserves the right to use additional exhibits as necessary to rebut Defendants' contentions at trial, including, but not limited to, the use of impeachment evidence. Plaintiff also reserves the right to amend and/or supplement this exhibit list as necessary.

## XI. DISCOVERY DOCUMENTS

The Plaintiff expects to offer the following discovery documents into evidence:

a. Deposition of Plaintiff Carlos Quiroz, taken on February 26, 2009. However, Plaintiff reserves the right to object on the grounds that a copy of the Deposition was not provided to Plaintiff for his review and revision, as required under Federal Rules of Civil Procedure 30(e) and California Rules of Civil Procedure 2025.520.

b. Defendant Shen's Responses to Interrogatories, Set One, dated May 26, 2009;

13

c. Defendant Shen's Amended Responses to Interrogatories, Set One, dated October 22, 2009;

d. Defendant Shen's Responses to Requests for Admissions;

e. Defendant Attygalla's Responses to Interrogatories, Set One, dated June 1, 2009;

f. Defendant Attygalla's Amended Responses to Interrogatories, Set One, dated October 22, 2009, including handwritten page attached regarding Interrogatories 2, 4, 6, 7, and 19;

g. Defendant Attygalla's Responses to Requests for Admissions, dated October 5, 2009;

h. Plaintiff's Answers to Set One Interrogatories Sent by Defendant Shen, dated April, 5, 2009 and April 21, 2009;

i. Plaintiff's Answers to Set One Interrogatories Sent by Defendant Attygalla, dated April, 5, 2009 and April 21, 2009;

## XII. FURTHER DISCOVERY OR MOTIONS

At this time, Plaintiff anticipates supplemental discovery regarding CDCR practices and procedures regarding the medical treatment and care of inmates suffering from kidney ailments similar to Plaintiff's. Plaintiff respectfully reserves the right to move the Court to permit this and other supplemental discovery as necessary.

The Plaintiff further anticipates *in limine* motion practice regarding the following:

a. An order excluding any evidence of or reference to the Plaintiff's felony conviction or the underlying grounds for Plaintiff's incarceration;

b. An order excluding any evidence of Plaintiff's prior offenses and/or imprisonment, including any charges or indictments against Plaintiff;

c. An order excluding any evidence of the Plaintiff's removability under the federal immigration laws or any deportation action involving Plaintiff;

d. An order permitting Plaintiff to appear at trial without handcuffs and/or other restraints;

14

e. An order permitting Plaintiff to appear at trial in his own clothing and not in a prison uniform.

Plaintiff respectfully reserves the right to file further motions *in limine* requesting orders excluding other prejudicial evidence as may become necessary.

Plaintiff also anticipates requests upon the Court to take judicial notice, under Federal Rule of Evidence 201, of the following:

          a. The current status of Defendant Attygalla's medical license (suspended);

          b. The underlying accusations and action by the Medical Board of California resulting in the Board's suspension of Defendant Attygalla's medical license for incompetence;

          c. The authenticity and accuracy of the California Department of Corrections Health Care Services Department Patient Health Care Education information regarding Kidney Stones.

Plaintiff respectfully reserves the right to file further requests for judicial notice as may become necessary.

## XIII. STIPULATIONS

Plaintiff is willing to stipulate to the list of Undisputed Facts in section III, *supra*.

## XIV. AMENDMENTS – DISMISSALS

Plaintiff requests an amendment to the pleadings, directed at the Plaintiff's Response and Opposition to Defendant's Motion for Summary Judgment with Attached Supporting Documents, Exhibits, and Memorandum of Points and Authorities in Support Thereof, Document # 29, filed December 28, 2009. In particular, Plaintiff requests that the Court amend Plaintiff's answer of "Undisputed" to "Disputed", with respect to Defendant's Undisputed Fact #80, stating: "There is no medical evidence that Dr. Attygalla failed to treat or address Mr. Quiroz's complaints of kidney stones." (Plaintiff's Separate Statement of Undisputed Material Facts in Opposition to Defendant's Motion for Summary Judgment, Page 14, Lines 16-19, No. 80.) Given the Plaintiff's statements in

15

the remainder of the pleadings and filed motions, it is clear that Plaintiff here made an inadvertent error.  As such, Plaintiff respectfully asks the Court to amend the pleadings to correct this error.

At this time, Plaintiff does not request any other amendments to the pleadings, dismissals, additions or substitutions of parties, or dispositions as to defaulting parties.

## XV.    SETTLEMENT NEGOTIATIONS

On December 9, 2011 and again on December 29, 2011, counsel for Plaintiff contacted Defendants' counsel to propose mediation without proceeding to trial.  On December 30, 2011, Defendants' counsel responded that Defendants "are not interested in mediation or alternative dispute."

After further correspondence from Plaintiff's counsel on January 4, 2012, indicating Plaintiff's intention to move for a settlement conference over Defendants' objection, Defendants' counsel responded on January 5, 2012, indicating that "a settlement conference will be futile unless plaintiff is willing to dismiss.  Defendants will not offer any money on this case."

On January 6, 2012, the Plaintiff moved for a settlement conference, in which Plaintiff stated that he believed "that this action could benefit from a settlement conference or alternative dispute resolution, and Plaintiff is willing to have a meaningful discussion with the Defendants to this end. Plaintiff respectfully submits that now is the right time to have that settlement discussion insofar as all parties are committing substantial resources to prepare for trial in March, yet to date there has been no meaningful effort to explore a non-litigated end to the case.  Indeed, Plaintiff believes that a settlement conference or some other form of supervised ADR may identify an opportunity for the parties to settle at an expense well less than the cost of a trial to an uncertain result."

Defendants filed their Response on January 12, 2012, concluding that "Defendants will not offer any monetary settlement in this matter.  Consequently, a settlement conference would be futile and a waste of judicial resources."

## XVI.   AGREED STATEMENTS

16

At this time, presentation of all or part of this action upon an Agreed Statement of Facts, aside from the Plaintiff's willingness to stipulate to facts as indicated in section XIII, *supra*, is not feasible.

## XVII. SEPARATE TRIAL OF ISSUES

Plaintiff does not believe that the issues presented in this action require separate trials.

## XVIII. IMPARTIAL EXPERTS

Plaintiff has no requests for the Court regarding impartial expert witnesses or a limitation of the number of expert witnesses.

## XIX. ATTORNEY'S FEES

Undersigned counsel were appointed by this Court as trial counsel *pro bono* on March 29, 2011 (Docket No. 76). Pursuant to U.S.C. § 1988(b), a prevailing party may receive reasonable attorney's fees as part of the costs, including expert witness fees.

## XX. TRIAL EXHIBITS

Plaintiff's medical records are included among the exhibits he may offer at trial. As such, Plaintiff requests that, to the extent any of these exhibits is admitted, such exhibits be sealed and not made available to the general public. Plaintiff does not otherwise anticipate any special handling of trial exhibits and does not have an opinion on the Court's retention of the trial exhibits pending appeal.

## XXI. TRIAL PROTECTIVE ORDER

At this time, Plaintiff does not anticipate any need for trial protective orders under Local Rule 141.1(b)(2). If any need arises in the course of this action, it can be resolved by this Honorable Court, orally, or if necessary, through motions *in limine*, provided Plaintiff is given time and opportunity to file such motions.

## XXII. MISCELLANEOUS

17

1       At this time, Plaintiff has no other comments, suggestions, or information that he feels might

2  aid in the disposition of the action.

3

   Dated:  January 18, 2012                     Respectfully submitted,

4
                                     WILMER CUTLER PICKERING
5
                                       HALE & DORR LLP
6

                           By:            /s/Matthew D. Benedetto
7
                                       Matthew D. Benedetto
8
                                       Kathleen Moran
                                       Attorneys for Plaintiff
9
                                        CARLOS QUIROZ

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRETRIAL STATEMENT OF PLAINTIFF CARLOS QUIROZ, PURSUANT TO LOCAL RULE 281 (CASE NO. 1:06-CV-01426-AWI-DLB (PC))**

**CERTIFICATE OF SERVICE**

Case Name: **Carlos Quiroz v. CDCR, et al.**        No. **1:06-cv-01426 AWI DLB (PC)**

I hereby certify that on <u>January 18, 2012</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**PRETRIAL STATEMENT OF PLAINTIFF CARLOS QUIROZ**

**PURSUANT TO LOCAL RULE 281**

Participants in this case who are registered CM/ECF users will be served by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on <u>January 18, 2012</u>, at Los Angeles, California.

<u>        Matthew D. Benedetto        </u>        <u>        /s/ Matthew D. Benedetto        </u>
Declarant                                                                              Signature

19